JOSEPH G. LAGACE *vs.* ERNEST L. SPRAGUE, SECRETARY OF STATE.

October 28, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

PER CURIAM. The petitioner prays for a writ of mandamus against the respondent ordering him to file petitioner's certificate of nomination as the Democratic candidate for representative in the General Assembly from the seventh representative district in the city of Woonsocket to be voted for at the election to be held November 4, 1930, and to disregard the certificate of nomination in which Edward B. Belheumer is named as the Democratic candidate for said office theretofore filed with the respondent.

Petitioner's claim is based upon the following facts. At a caucus of the qualified electors of the Democratic party

held in said district September 23rd Edward Benoit was nominated to be the candidate of the Democratic party for said office of representative. At said caucus it was voted that "all vacancies that may occur in ward caucuses shall be filled by the ward committees and all others to be filled by the city committee." The boundary lines of the seventh representative district are the same as those of the fifth ward in said city. A certificate of the nomination of Mr. Benoit was duly filed with the Secretary of State.

October 11, Mr. Benoit withdrew his name as candidate for said office of representative by filing his withdrawal with the Secretary of State. On the same day the fifth ward Democratic committee, having been authorized by the above-mentioned vote of the caucus, nominated Edward B. Belheumer to be the candidate of the Democratic party for representative to fill the vacancy caused by the withdrawal of Mr. Benoit and a certificate of such nomination was filed with the Secretary of State. October 14, the executive committee of the Democratic State Central Committee nominated petitioner to be the candidate to fill the vacancy caused by the withdrawal of Mr. Benoit. A certificate of petitioner's nomination for said office was presented to respondent for filing. Respondent refused to file said certificate for the reason that he had previously filed a certificate stating that Edward B. Belheumer had been nominated to be the candidate to fill the vacancy caused by the withdrawal of Mr. Benoit.

. Petitioner proved that October 6, upon the recommendation of the chairman of the Democratic city committee of the city of Woonsocket, the executive committee of the Democratic State Central Committee passed a vote removing from office the five members of the fifth ward Democratic city committee of said city.

Petitioner claims that as a result of this vote said ward committee was dissolved and thereafter said committee had no authority to name a candidate to fill the vacancy caused by the withdrawal of Mr. Benoit and the certificate of nomi-

nation of Edward B. Belheumer to fill said vacancy filed with respondent was null and void.

Petitioner's claims cannot be sustained as the executive committee of the Democratic State Central Committee had no authority to remove from office the members of said ward committee. The ward committee was elected under authority of Section 1, Chap. 12, G. L., 1923 as amended by Chap. 668, P. L., 1925 by the qualified voters of the Democratic party in said ward. Section 3 of said chapter 12 provided that ward committees should hold office from the date of their election until the next election for such committees and thereafter until their successors should have organized and that any vacancy occurring in the membership of a ward committee should be filled by the remaining members of said committee. It thus appears that the tenure of office of the members of the ward committee was fixed by statute and that provision was made for the continuance of the full membership of the committee elected and qualified. The voters in the ward were given the right to elect their own members of their ward committee. The statute does not give a state central committee nor its executive committee authority to annul the action of the voters by dissolving a ward committee or removing any of its members from such committee. It follows that the vote of the executive committee passed October 6 purporting to remove the members of said fifth ward committee was inoperative.

Petitioner also contends that the fifth ward Democratic committee ceased to exist July 1, 1930, when Chapter 1515, P. L., 1930, took effect and Chapter 12, G. L , 1923 and certain other caucus laws were repealed and that any action taken by said ward committee after said date was null and void. He bases his contention upon the fact that "ward" committees are not specifically mentioned in the first sentence of Section 4 of said chapter which reads: "All city and town committees beginning 1930, shall organize biennially in the month of October, and city and town committees as now constituted shall perform their respective duties in

accordance with this act until their successors are elected and organized."

The contention of the petitioner is inconsistent with his petition filed in this court which alleges as the sole ground for relief that said fifth ward committee had no authority to fill the vacancy caused by the withdrawal of Mr. Benoit because its members were removed from office by vote of the executive committee of the Democratic State Central Committee passed on the 6th day of October.

The petitioner recognizes the existence of said ward committee up to the time the executive committee attempted to remove its members from office on the 6th day of October. Said executive committee and the chairman of the Democratic city committee of Woonsocket also recognized the existence of the ward committee on said date. The voters in the Democratic caucus held September 23 also recognized the existence of said committee when they voted that "all vacancies that may occur in ward caucuses shall be filled by the ward committees." If the other Democratic ward committees of Woonsocket were elected at the same time that the fifth ward Democratic committee was elected, the contention of the petitioner, if allowed, would raise serious questions as to the validity of the nominations of the other Democratic nominees for representatives in the General Assembly from said city.

The contention of petitioner can not be sustained as a brief consideration of the purpose and scope of said chapter 1515 and of the duties imposed therein upon ward committees will show that the General Assembly intended, by the provisions contained in said chapter, that the ward committees in existence at the time said chapter took effect should continue in office until their successors were elected and qualified. Chapter 1515 is a codification of former statutes relating to the holding of caucuses in cities and towns with important amendments and additions thereto. It requires that the caucuses of all political parties in all the cities and towns shall be held in accordance with its provisions, (Sec.1).

By the express words of the statute the qualified electors of each party in each of the cities are required to elect biennially beginning 1930, a ward committee for each ward: the members of the ward committee are to hold office from the date of their election until the next election of such committee·and thereafter until their successors shall have organized. The statute provides that the members of the several ward committees shall constitute the city committee of that political party. (Sec. 2) This is the only provision there is for a city committee; consequently if there are no ward committees there can be no city committee. The ward committees are thus made the basis of political party government in each city. The statute also requires each ward committee to attend its party caucuses held in its ward to perform the duties imposed upon it and further provides that any vacancies occurring in the membership of a ward committee shall be filled by the remaining members of such ward committee, (Sec. 5).

The ward committees of each political party in each city is required to file its list of the names of committees or nominees to be voted upon at any caucus and the method is also stated by which lists of nominations may be filed by any group of electors of such political party in any ward. The city committee is not authorized to file lists of the names of its nominees or committees to be voted upon at any ward caucus.

The above references to the election, duties and obligations of the ward committees of each political party in each ward in each city of the state show that the General Assembly when it enacted Chapter 1515 did not intend that ward committees should cease to exist. The provision relative to the tenure of office of the ward committees is the same in Chapter 1515 as it was in the prior law, Chapter 12. When the General Assembly enacted that ward committees should constitute the city committee and that the city committees as then constituted should continue to perform their respective duties, the General Assembly evidently intended

that the ward committees as then constituted should continue to perform their respective duties until their successors were elected and qualified. To hold that the General Assembly intended that ward committees in existence at the time Chapter 1515 took effect ceased to exist would deprive each political party in each city (excepting Providence) of the right to "file its list of the names of the delegates, officers, committees or nominees to be voted upon at any caucus." Such a construction of the statute would be contrary to the manifest intention of the General Assembly and would render inoperative many of the provisions of the statute relating to the duties and obligations of the ward committees.

For the reasons above stated the petition is denied and dismissed.

*Patrick P. Curran, Curran, Hart, Gainer & Carr*, for petitioner.

*William A. Needham*, for respondent.